Good morning, Your Honors. May it please the Court, my name is Richard Weidman. I represent Robert Sweeney. I remember about 48 years ago when I was in law school, Professor Moore told me the issue in a 12b-6 hearing was not whether… J.W. Moore? Excuse me? J.W. Moore? Yes. Good. Good professor. Thank you. Anyway, the issue was not whether the plaintiff would ultimately prevail, but whether the plaintiff would have a right to try to put on his case. And what happened here is the Court… That's only something a lawyer would like. Excuse me? That's something only a lawyer would believe. Well… Clients are only interested in prevailing. We all, unfortunately, suffer from that ailment of being lawyers. Anyway, and the district court here, I think, just missed a boat. This case was decided almost two years ago by the district court, and since then a lot of things have happened in this area. And I wanted to go over some of those cases first before I talked about what happened in the district court. And I'm going to talk about three or four of them. Halagian v. Deutsche Bank in February of 2013 said that when the authority of the contested assignment of a substitution and trustee, and it held that documents whose legitimacy is reasonably questioned, that issue should not be resolved in a fair and consistent fashion. How was it reasonably questioned here? What? How was it reasonably questioned? It's forged. It's forged. Say you, but… That's what we allege. And what difference… Allege is not enough. You have to reasonably question it. How did you reasonably question it? We gave you exhibits. We gave the court – we attached three exhibits to the Second Amendment complaint that showed the differences in the signatures. We allege in our First Amendment complaint that this same lady's signature had been found to be a forgery in a Massachusetts case. I mean, this isn't the first – this isn't the first time this issue came up, especially with this particular signer. But we allege… All you've shown is that the signature is different. But, you know, forgery, you have three elements. Have you proven intent to defraud? Have you proven… Well… You know, it has – just the fact that something, you know, somebody – you might authorize somebody in your office to sign your name. Wait a minute, Your Honor. Let's get from the realm of fantasy to the realm of reality. Wait a minute. I'm sorry? We want to get from the realm of fantasy to the realm of reality. It's fantasy to think that if you're an authorized signatory, you'll sign somebody else's name. I don't find that nearly as fanciful. I find more fanciful the notion that your client was defrauded as a result of that. Where was the intent to defraud? What's the answer to Judge Kuczynski's question? The intent to defraud my client is to be able to have the foreclosure on his property, which they couldn't otherwise do. Why couldn't they have? Your client hadn't paid the money, and the failure to pay the money had nothing to do with who signed the document. And I agree with that 100 percent. Well, that makes it hard for me to figure out how your client was defrauded. Because, Your Honor, they have to be able to go through the procedures. There's two ways to foreclose in California. There's a nonjudicial foreclosure and a judicial foreclosure. In a nonjudicial foreclosure, there's 12 pages, eight-point type, single-spaced, two columns to a page of procedures you have to follow. Okay? And they apparently didn't have the ability to follow those procedures properly by getting somebody to sign the substitution. The question is, how was your client defrauded by that? Well, because he got foreclosed sooner than he would have otherwise been. He got foreclosed because there was a foreclosure. He didn't pay the loan. Well, but the fact that he didn't pay the loan doesn't mean that you're entitled to foreclose on him without following the procedures properly. You might have a procedural violation, but where's the fraud? In order to have a forgery, you have to have an intent to defraud. The intent was to be able to have somebody who's not lawfully able to conduct this foreclosure, power of default, conduct it. Is there any evidence or suggestion that the person whose signature was supposed to be there did not authorize or oppose the application of the signature? Again, that's the simple yes or no question. Is there any evidence that the person whose signature was supposed to be there did not authorize or oppose the application of the signature? We don't have evidence at this time because we didn't have we're 12B-6. We haven't proceeded. We asked to take discovery. Is there an allegation sufficient to satisfy Iqbal that makes that allegation probable or plausible? I believe there was. When we say the word forgery, that includes all the elements. Well, that just says the word forgery. That doesn't give me any reason to believe there was an intent to defraud. Well, that's included. What is it that makes that out? No. The whole point of Iqbal is you can't just allege it. You have to give us some reason to think that that allegation is plausible. What makes that allegation plausible? Well, I was giving you the reason. The reason you gave is that you'd alleged it. That's not a good enough reason. So give me another one. I was giving you the reason, which is that if you're authorized to sign, you use your own name. If you're authorized, you don't sign someone else's name. Now, do you ever practice law with multiple attorneys and ever have somebody else sign a pleading for you because you weren't there? They sign their name because they're in the firm. They sign their name. They don't sign my name. You've never seen somebody else sign a signature with initials following or saying for or something else? Your assistants never signed for you like that? No, sir. My initials, my assistants never signed. And if somebody puts their initials on it, that's not a forgery. There's no initials on this. This is part of a scheme that we allege in paragraph 12 was because there was no paperwork and because they didn't know how to do this. And paragraph 12 of the second amended complaint, they say that they had to do this in order to be able to foreclose, and they couldn't do it without it. Now, cases, you know, this is the old argument that I was going to talk about, the later cases that talk about there's no damage, there's no prejudice because he's not paying. And the later cases, the more recent cases on that subject say that the ability to foreclose sooner, the fact that it can do it shorter, it takes longer to do it right, is in itself damage. That's Michael versus Deutsche Bank and Tambouri versus SunTrust. No, it's damage and it's damage on the entire system, meaning everybody else has got to pay for what your client's not paying. No. Isn't that damage? No. The whole recording system of California is called into question. When you're defrauding everybody in the state of California by allowing people to submit forged documents to allow to do a foreclosure. So your client wants to stay on the property on that much longer period of time without paying anything for it so everybody else in the system bears that cost? No. Who's defrauded there? Is how your client defrauded? No. My client says that in order to use the nonjudicial foreclosure system, you have to comply with the rules. And if you choose to, we didn't elect, if they would have done it right and had the initial trustee file a foreclosure or have some real person sign this, not a forgery, not a person who's not authorized, and you have to concede to me that any authorized person would sign their own name if they're authorized. There's no reason to sign a forged signature. There's no reason to have a notary say that this person appeared before me and signed it when it was not that same person. Remember, this is a notarized signature, Your Honor. And, you know, I've never seen or done, and I'm sure you haven't, when you had to have your signature notarized, have somebody else sign for you and have it notarized as if it were you. This is a notarized document that's meant to be recorded. And all they have to do is do the right thing. We understand your position. What? We do understand your position. Excuse me? We understand your position. Thank you. Oh, can I finish and talk about? I think you are finished. Thank you. You don't want me to talk about the recent case, the Glasky case that talks about the substitution? We have it. Thank you. All right. Thank you. Good morning. May it please the Court, Dan Selitra on behalf of Appel Ease American Home Mortgage Servicing. Anything you heard this morning that isn't adequately covered in your brief? I'm sorry? Have you heard anything this morning that's not adequately covered in your brief? No. I believe all the issues have been covered. Thank you. Cases are in your stand submitted.
judges: Kozinski, Reinhardt, Clifton